UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BAHMAN MEHRALI (AKA LARRY L. PLAC),

                                Petitioner,                          26-cv-00809-JON
                                                                     OPINION & ORDER

                    -v-

MICHAEL BALL, in his official capacity as
Acting Deputy Field Office Director, Buffalo
Field Office, U.S. Immigration and Customs
Enforcement and *de facto* Warden, Buffalo
Federal Detention Facility,

                                Respondent.[1]

_____

Jon O. Newman, Senior Circuit Judge, sitting by designation:

Pending before this Court[2] is a petition for a writ of habeas corpus ("Petition")

pursuant to 28 U.S.C. § 2241, filed on April 22, 2026 by Petitioner Bahman Mehrali (AKA

Larry L. Plac), Dkt No.1 (his papers refer to him as "Plac" as will this opinion); an Answer

and Return ("Response") filed by the Respondent on May 14, Dkt. No. 4, and Petitioner's

Reply to Respondent['s] Opposition to Petition for Writ of Habeas Corpus, filed on May

21, Dkt. No. 6. The Petition seeks a writ of habeas corpus in order to obtain Plac's release

from confinement because of the Government's prolonged inability to obtain travel

---

[1] The caption needs to be changed for reasons discussed *infra* p. 4. The Clerk is requested to add MICHAEL BALL, in his official capacity as Acting Deputy Field Office Director, Buffalo Field Office, U.S. Immigration and Customs Enforcement and *de facto* Warden, Buffalo Federal Detention Facility as the Respondent as a Respondent, remove all other Respondents from the caption, dismiss the other Respondents from the case, and conform the official caption accordingly.
[2] The case was assigned to this Court on May 21, 2026. Dkt. entry following Dkt. No. 5.

documents for his removal to Iran since he was ordered removed on December 1, 1978—more than 47 years ago—and since his current detention began on June 23, 2025—more than one year ago.

## Facts

Plac, aged 73, has lived in the United States for more than 50 years. He has lived for most of his life in upstate New York, where he has owned 11 properties, currently owns two properties, and owns and operates a construction business. Petition ¶¶ 1, 18. His Petition alleges, and the Respondent does not dispute, that he suffers from mental health problems and does not recall anything beyond the last 20-30 years. Petition 3, ¶ 1. The Respondent alleges that Plac is a native and citizen of Iran. Response 2, ¶ 3. Plac contends that he does not know where he was born, Petition 6, ¶ 16, and that he has no ties to Iran, *id*. 4, ¶ 2.

The Respondent alleges that Plac entered the United States on September 11, 1968, at Chicago, IL, Warrant of Deportation (attached to Response), as a nonimmigrant student with authorization to remain in the United States until February 28, 1973. Response, Decl. of Deportation Officer John R. Kloosterman ("Decl.") 2, ¶ 6. He overstayed his visa. Response 2, ¶ 4. On July 17, 1975, he was granted voluntary departure in lieu of deportation but failed to depart. *Id*. ¶¶ 4-5. For failing to depart he was charged as subject to deportation under the Immigration and Nationality Act ("INA") §

2

241(a)(2), 8 U.S.C. § 1231(a)(2). Decl. 2, ¶ 8. On December 1, 1978, an order of deportation was entered. *Id.* ¶ 9.[3]

In 2004, Plac was taken into custody for removal to Iran, but Iran would not issue a travel document because he did not have an Iranian birth certificate. *Id*. ¶ 10. In February 2005, he was released on an Order of Supervision. *Id*. ¶ 11. On February 8, 2017, he was placed on a new Order of Supervision. *Id*. ¶ 13.

On June 23, 2025, Plac was taken into custody for removal to Iran, *id*. ¶ 14, and given a Notification of Revocation of Release, Response, Exhibit A at 4. On July 3, 2025, a Warrant of Removal/Deportation was issued. *Id*. at 6. On July 17, 2025, a travel document request was presented to the government of Iran. Decl. ¶ 17. On August 19, 2025, the Iranian consulate advised that a travel document cannot be issued because an Iranian birth certificate or passport was required. *Id*. ¶ 20.

Thereafter, Immigration and Customs Enforcement ("ICE") investigated whether Plac could be removed to a country other than Iran. *Id*. ¶ 23. On November 29, 2025, Pakistan officials advised that a travel document would not be issued without an original birth certificate or passport. *Id*. ¶ 24.

On February 8, 2026, ICE emailed Iran requesting an update on the issuance of a travel document. *Id*. ¶ 25. On April 28, 2026, representatives of the government of Iran advised that although they were working on the travel document request, they had no updates. *Id*. ¶ 27.

---

[3] The Order of deportation, Response, Exhibit A, is not signed, but the Petitioner makes no complaint of this omission.

**Discussion**

**Jurisdiction**

Although the Respondent "does not dispute that this Court has subject matter jurisdiction," Response ¶ 1, a court is obligated to be certain that it has jurisdiction. *Reddington v. Staten Island University Hospital*, 511 F.3d 126, 131 (2d Cir. 2007). A district court generally has jurisdiction to issue a writ of habeas corpus. 28 U.S.C. § 2241. Despite this statute, the Court of Appeals for this Circuit has recently ruled that 8 U.S.C. § 1252(b)(9) precludes a district court from exercising jurisdiction under section 2241 over certain attempts by aliens, subject to removal orders, to secure their release. *Mahdawi v. Trump,* No. 25 Civ.1113, 2026 WL 2090981, at *6 (2d Cir. July 21, 2026).

Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this title shall be available only in judicial review of a final order [of removal]." IIRIRA, Pub. L. No. 104-208, § 306(a)(2), 110 Stat. 3009–546, 3009–610 (codified as amended at 8 U.S.C. § 1252(b)(9)).

"[U]nder the text of § 1252(b)(9), the relevant inquiry is whether the legal or factual questions raised by [an alien's] habeas petition 'aris[e] from *any action taken . . . to remove [him]*.' 8 U.S.C. § 1252(b)(9)." *Mahdawi*, 26 WL 2090981 at *7 (emphasis and brackets in original). In answering that inquiry, the Court of Appeals distinguished between "a challenge to the length or conditions of confinement," and a challenge that "'raise[s] *legal questions* challenging the government's very basis for trying to remove (and thus

4

detain[]) him.'" *Id*. at 8 (quoting *Khalil v. President, United States*, 164 F.4th 259, 274 (3d Cir. 2026)) (italics and brackets in original). The Court unmistakenly implied that habeas corpus was available for the first category of claims but not for the second category of claims.

*Mahdawi* noted that a habeas corpus petitioner "could have sought release pending his removal through the administrative process, "pointing to "an administrative hearing pursuant to *Matter of Joseph*, 22 I.&N. Dec. 799 (B.I.A. 1999). 26 WL 2090981 at *11. The Court of Appeals explicitly recognized the authority of the immigration judge conducting a *Joseph* hearing to release a detained alien on bond. *Id*. Arguably, the availability of a *Joseph* hearing provided the Government with an argument that Plac's release claim is precluded in a district court for failure to exhaust administrative remedies. However, that is a claim processing argument, *Santos-Zacaria v. Garland*, 598 U.S. 411, 417-18 (2023), which is forfeited if not asserted *Hamer v. Neighborhood Housing Services of Chicago*, 583 U.S. 17, 20 (2017), and the Government has not made such an argument in this case.

Pertinent to the pending case, *Mahdawi* stated, "[I]n the event that removal proceedings involving a detained individual are unreasonably prolonged, this Court's precedent provides that a petitioner may file a habeas petition and challenge his detention 'on the ground that it [has] reached an unreasonable length.'" *Id*. at *12 (quoting *Velasco Lopez v. Decker,* 978 F.3d 842, 852 (2d Cir. 2020)) (second brackets in original).

The determination that this Court has jurisdiction because Mehrali has brought a traditional habeas corpus petition requires a change in the caption. "[L]ongstanding practice confirms that in habeas challenges to present physical confinement-'core

challenges'-the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).

**The Merits**

The sole issue on the merits, whether Plac is entitled to release from confinement, is governed by the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Court began its opinion by noting that "[w]hen an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *Id*. at 682.

The Court then noted that "[a] special statute authorizes further detention if the government fails to remove the alien during those 90 days. It says:

> "'An alien ordered removed . . . [as a result of violations of status requirements or entry conditions . . . ] may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision' . . . . 8 U.S.C. § 1231(a)(6) . . . ."

*Id*. (brackets in original). The Court then stated that it had to decide "whether this post-removal-period statute authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal . . . . [W]e construe the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Id*. (emphases in original).

6

The Court continued, "Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id*. at 699-700.

Turning to a permissible continued period of detention beyond the statutory 90 days, the Court said, "[W]e think it practically necessary to recognize some presumptively reasonable period of detention." *Id*. at 701. Setting that presumptively reasonable period of detention, the Court said, "We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period." *Id*.

The Court then outlined the procedure for implementing the length-of-detention standards.

"After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

The Court cautioned that the 6-month period was not an absolute: "This 6-month presumption, of course, does not mean that every alien not removed must be released after 6 months. To the contrary, an alien may be held in confinement until it has been

determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

In this case, the Government's first opportunity to remove Plac occurred 47 years before the petition for a writ of habeas corpus was filed when the 1978 removal order was entered. However, the *Zadvydas* inquiry as to whether there is no significant likelihood of removal in the reasonably foreseeable future does not begin until after the initial 90-day detention plus, in most cases, after the six-month presumptive period of additional detention.

The Department of Homeland Security took Plac into custody most recently on June 23, 2025, and he has remained in detention ever since.[4] Measured by the date the petition for a writ of habeas corpus was filed on April 22, 2026, the period of detention had then lasted three days short of 10 months. Measured by the date this opinion is filed, the period of detention has now lasted more than one year. That is more than enough to trigger the inquiry as to whether Plac has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

Plac has clearly provided such good reason. Iran has consistently informed the Government that a travel document for Plac will not be issued until an Iranian birth certificate or passport is produced. No such document has been produced, and nothing in the record indicates any likelihood that one will be. Under *Zadvydas*, the Government must respond with evidence sufficient to rebut Plac's showing. Although the Government has recently made efforts to obtain travel documents from Iran, those efforts have

---

[4] Plac was in detention for a brief period from some date in 2004 (the Government has not specified a date) until February 2005.

consistently been rebuffed, and nothing in the record indicates that they are likely to succeed in the reasonably foreseeable future.[5] The latest response from Iran reports that they have no updates on ICE's request for a travel document. The Government's attempt to obtain travel documents from a third country has been rejected.

In sum, Plac has sustained his burden under *Zadvydas*, and the Government has not sustained its burden. The petition for a writ of habeas corpus will be granted, and Plac will be released.

In such circumstances, *Zadvydas* specified that the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances. 533 U.S. at 700. By referring to supervised release, the Supreme Court contemplated that a district court would set the terms of such release.

No statute appears to specify the conditions of supervised release for a noncitizen released via a petition for a writ of habeas corpus pursuant to *Zadvydas*.[6] The matter appears to be left to the discretion of the district court. By analogy, however, the provisions of INA § 241(a)(3), 8 U.S.C. § 1231(a)(3), appear to be applicable and will be applied. However, no specially restrictive conditions need be applied to this 73-year-old man with mental health issues who has been living in upstate New York for decades and has not been convicted of a crime.

---

[5] Although this case is being decided on the parties' pleadings and supporting documents, the Government has made no claim that it has evidence to present at a hearing that might show a likelihood of obtaining travel documents.

[6] 18 U.S.C. § 3583(d) contains a provision for supervised release for "an alien defendant," but Plac is not an alien defendant, not having been convicted of any crime.

Accordingly, it is ORDERED that the petition for a writ of habeas corpus is granted, the petitioner shall be released from confinement within three days from the date of this opinion, subject to the conditions of release specified in 8 U.S.C. § 1231(a)(3), and the court-named Respondent Michael Ball shall promptly notify this Court when the release has occurred. It is further ORDERED that the Respondent and any person acting in concert with him shall not remove the petitioner from the Western District of New York pending further order of this Court.

SO ORDERED.

Hon. Jon O. Newman
Senior Circuit Judge of the U.S. Court of Appeals
for the Second Circuit, sitting by designation

DATED: July 29, 2026